# AFFIDAVIT IN SUPPORT
# OF
# APPLICATION FOR CRIMINAL COMPLAINT

I, Michael J. Lecuyer, being first duly sworn, state under oath as follows:

<u>Preface</u>

1. This affidavit is furnished to support a criminal complaint alleging the offense of Possession with Intent to Distribute a Controlled Drug, Methamphetamine, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), for the following:

**ERIC BRIGGS Jr.**
**DOB:**

2. Based upon information obtained from a variety of sources, including a motor vehicle stop on April 1, 2021, interviews of occupants of this car, and the seizure of methamphetamine and other drugs, I submit that there is probable cause to believe that **BRIGGS** has committed the offense of possession with the intent to distribute the controlled drug methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

<u>Introduction</u>

3. I am an investigative or law enforcement officer within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516

4. I have been employed as a Special Agent of the United States Drug Enforcement Administration ("DEA") since 2007. In September 2007, I attended and graduated from the DEA's Basic Agent Academy in Quantico, Virginia. The DEA Basic Academy included comprehensive, formalized instruction in, but not limited to: basic drug investigations; drug identification, detection, and interdiction; familiarization with United States drug laws; financial investigations and money

laundering; identification and seizure of drug related assets; organized crime investigations; physical and electronic surveillance; and undercover operations. Upon completion of that Academy, I was assigned to the DEA McAllen District Office, in McAllen, Texas, where I performed investigative duties in the field of drug enforcement until 2011, when I was assigned to the Boston Division Office of DEA's New England Field Division ("NEFD"). In 2013 I was assigned to the Manchester District Office in Bedford, New Hampshire where I am currently assigned as the NEFD Clandestine Laboratory Team Coordinator. In my position as NEFD Clandestine Laboratory Team Coordinator I am responsible for managing each DEA Clandestine Laboratory Team within the six States that comprise the NEFD. I have also taught thousands of State, Local, County, and Federal Law Enforcement Officers at clandestine laboratory awareness safety courses throughout the United States and Internationally.

5. Prior to my employment with the DEA, I was a police officer in the State of New Hampshire for approximately six years, during which time my duties included investigation of both drug and non-drug related offenses. In 2003 I received a Bachelor of Science degree in Business Administration from the University of New Hampshire.

6. During the course of my employment with the DEA, I have received specialized training regarding the activities of drug traffickers and various aspects of narcotics investigation, including the methods used to package, transport, store, and distribute narcotics, and the methods used by drug traffickers to conceal and launder the proceeds of their drug trafficking activities.

7. In addition to my training, I have had extensive experience in the investigation of the activities of drug traffickers. Since joining the DEA, I have participated in hundreds of drug investigations as a case agent and in subsidiary roles relating to the distribution of controlled substances, including cocaine, cocaine base, heroin, fentanyl, marijuana, methamphetamine, and other illegal substances. I have

personally participated in almost all aspects of drug trafficking investigations, including but not limited to conducting surveillance, acting in undercover capacities, using confidential informants, executing arrest and search and seizure warrants, and conducting court-authorized Title-III wire and electronic surveillance. I have debriefed numerous defendants, informants, and witnesses who had personal knowledge about drug trafficking activities and the operation of narcotics trafficking organizations. I have sworn out affidavits in support of Title-III electronic surveillance orders, search warrants, arrest warrants, and other court applications. Through this training and experience I have gained expertise in the use of a variety of law enforcement techniques, including the application and utilization of electronic and wire interceptions, the utilization of confidential informants (CIs), the use of physical surveillance techniques such as pole cameras and video recorders, and various types of electronic surveillance techniques such as body wires and transmitters.

8. Through my training and experience I have become familiar with the manner in which drug traffickers smuggle, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds. I am familiar with the manners and methods by which drug traffickers package and prepare narcotics for transportation and distribution, their methods of operation, and security measures which are often employed by drug traffickers to avoid vulnerability to law enforcement and to other drug dealers, who might attempt to steal their drugs, their profits, and/or their customers.

## Probable Cause

9. On April 1, 2021, members of the New Hampshire State Police, New Hampshire Attorney General's Drug Task Force, and DEA were conducting surveillance of a suspected drug trafficker's residence in Carrol, New Hampshire. While conducting surveillance, a blue colored 2002 Volvo 70 Wagon, registered to Eric BRIGGS Jr., was observed arriving and departing the residence after a short period of time. This

is common activity with drug transactions. New Hampshire State Police on surveillance noted the vehicle also had a defective front headlight.

10. At approximately 8:30 p.m., surveillance units alerted New Hampshire State Police Patrol Units of the suspicious activity and motor vehicle violation related to this vehicle. This vehicle was observed by Trooper Bednar crossing the white fog line on Route 3 as it departed the residence. Trooper Bednar also noted the vehicle had a defective front headlight. Trooper Costa and Trooper Bednar stopped this vehicle on Route 3 in Whitefield, New Hampshire.

11. The occupants of the vehicle were identified as Eric BRIGGS Jr. (driver), Brittany STINSON (front passenger), and Joseph CLAY (rear passenger).

12. As Trooper Bednar approached the vehicle on the passenger side, he observed a prescription bottle and a tied piece of plastic in an open purse on the floor at STINSON's feet. Trooper Bednar asked STINSON if the purse belonged to her which she stated it was. Trooper Bednar asked STINSON to exit the vehicle to speak with him. As STINSON exited, she placed her hands in her coat pockets in a fast manner as she approached Trooper Bednar. Trooper Bednar asked STINSON to remove her hands from her coat pockets and performed a pat frisk for his safety. While conducting a pat frisk, Trooper Bednar heard the sound of plastic crinkling from STINSON's pockets. STINSON stated there were old plastic baggies in her pocket. STINSON consented to a search of her person to remove the plastic baggies. Trooper Bednar removed several plastic baggies with residue inside them from STINSON's coat pocket and a small piece of rolled up tinfoil which Trooper Bednar recognized as paraphernalia consistent with drug use and packaging. STINSON told Trooper Bednar she had not used illegal drugs in the past six months and the baggies in her pocket were old. Trooper Bednar asked STINSON for consent to search her purse which she consented to. Inside of STINSON's purse, Trooper Bednar located several plastic baggies with residue, a prescription bottle with residue, and a metal spoon with burn marks. Trooper Costa advised Trooper

Bednar that STINSON was found to have an outstanding arrest warrant for transporting drugs in a motor vehicle. STINSON was placed under arrest.

13. Trooper Bednar then spoke with BRIGGS. Trooper Bednar asked BRIGGS to exit the vehicle, which he did. Trooper Bednar advised BRIGGS that STINSON was placed under arrest and that he had found several items related to illegal drugs in her possession. BRIGGS told Trooper Bednar that he did not know STINSON had an arrest warrant and that he did not have any illegal narcotics inside of his vehicle except for a scale. BRIGGS' statement to Trooper Bednar about where he, STINSON, and CLAY were coming from differed from what STINSON told Trooper Bednar.

14. Trooper Bednar asked BRIGGS for consent to search his vehicle which BRIGGS granted verbally and signed a written consent to search form provided by Trooper Bednar. Inside of the vehicle, Trooper Bednar located a clear baggie with a crystal like substance, which appeared to be methamphetamine, and a glass smoking pipe with burn marks. The clear baggie containing suspected methamphetamine was found beneath the rear driver's side seat. At the conclusion of the search, BRIGGS told Trooper Bednar the baggie of methamphetamine belonged to him. The baggie of suspected methamphetamine weighed approximately 45 grams. The substance later tested presumptively positive for methamphetamine when an Agent field tested the substance using a TruNarc drug detector.

Conclusion

15. Based upon my training and experience, and the forgoing information, there is probable cause to believe that **BRIGGS** has committed offenses involving possession with intent to distribute the controlled drug fentanyl, in violation of Title 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

/s/ Michael J. Lecuyer
Special Agent Michael J. Lecuyer, DEA

The Affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

_____
Andrea K. Johnstone
United States Magistrate Judge

Date: Apr 30, 2021

Time: 1:41PM, Apr 30, 2021